We'll move on to the next case on the docket, Eddie Sierra v. City of Hallandale Beach, Florida. Mark Sharmatz is here for appellate Sierra. Christopher Stearns is here for the athlete, the City of Hallandale Beach. Mr. Sharmatz, are you ready to proceed with your argument? Yes. My name is Mark Sharmatz and I am co-counsel for Eddie Sierra. Two issues on this appeal are standing and intentional discrimination. Congress enacted Title II of the ADA more than 30 years ago to require that states and local governments not discriminate against individuals with disabilities and to require public entities to provide auxiliary aids and services including captioning to ensure effective communication with deaf individuals. Sierra has a strong case. He's an individual with a disability. He's qualified to check the city websites. The city is subject to Title II of the ADA in 504 and I think all the parties agree that a lot of the city's websites were not accessible to him because they lacked captioning. But we recognize that a strong case, a strong ADA 504 case does not guarantee standing. And regarding standing, we have to allege and show through affidavits at summary judgment stage that standing requires injury in fact, harm, causation and redressability. The district court did not address causation and redressability. And I think that was unfortunate because when you have all three together, you have a more complete record. But the more problematic or more difficult part of the district court decision is that it applied standards or factors that it considered appropriate for or that other courts considered appropriate for future injury and injunctive release and took those factors and applied them to Sierra's case which at the time of the district court decision was for past injuries and for damages. And so this is Judge Newsom, just so you don't run out of time, go ahead and spell out for us what the alleged injuries in fact here are so we can judge whether they're sufficient. Okay. Sierra suffered particularized harm which is obviously what the Supreme Court and this court has found because the harm was unique to him as opposed to everybody else. He personally wanted to review the website and tried to access the videos only to learn that they were not captioned. This is something that he personally experienced. The harm was concrete because he actually suffered the frustration of not being able to access the videos and not being able to get the videos captioned despite his requests. He suffered emotional distress as well as the stigmatic injury that comes with being discriminated against. And we recognize that at the summary judgment stage, he had to provide affidavits and evidence. And he did so. The first one he provided was his first affidavit and that's called an Affidavit in Support of Motion for Summary Judgment. And there he indicated he had contacted the city, that he had visited the websites, the websites were not accessible because they weren't captioned, and he wanted to understand the audio content of the websites because he was interested in government policy, elderly individuals, and people with disabilities. And he wanted to know more about business incentives. So let me just ask you a quick question. If we conclude under cases like Allen v. Wright that the stigmatic injury of being discriminated against is sufficient, do we have to decide whether or not things like frustration and embarrassment count? I'm probably not. But, you know, in this case, the one affidavit was followed by a second affidavit. And the second affidavit was much more specific. And that one indicated that Sierra was the director of South Florida Seniors, that he'd done work in the city as a Medicaid planner and Medicare presenter, including assisting individuals in the city of Allendale, that he served on committees in other counties, but they were all from South Florida, and that he regularly visited the city as part of his advocacy work. And that videos that were not captioned related to topics of special interest of importance to him, disability issues, senior citizens' issues, health issues, policy issues. The issue, I think, that you were asking is you could have injury, in fact, by both tangible and intangible harm. That's Spokio. And Spokio, of course, is the 7-2 decision by Justice Alito. It requires particularized and concrete harm, but recognized that discrimination, recognized that there could be ways of having not tangible harm that would be actionable. And I think that's, in part, this case. I think, in part, this case is also tangible harm because the websites were not accessible. And there was discrimination because he suffered the almost two-year period of time with not having these websites not accessible. I also think, besides the two affidavits, the city's own policy enacted in April of 2019 is evidence that there was discrimination for past injuries. Obviously, after the policy was enacted, Sierra's council dropped the claim for injunctive relief. But that certainly did not drop the claim for past injury and past damages. And in there, this resolution was a direct reference to Sierra's claim because two things happened. One, they took down the archived videos that were not captioned and then allowed for a mechanism to have Sierra request that these videos be captioned on a case-by-case basis. So that was one of the things he asked for in the amended complaint. And two, remember, there's four, as this court recognized in the first decision in this case, there are four really platforms. And for the first time, as this resolution and the accompanying affidavit to the resolution from the city employee makes clear, for the first time, they enabled captions on what I'll call the social media platforms. So there's a recognition here that there's been past harm and that they corrected it. I'm not complaining that they corrected it. The complaint is that they corrected it two years later and that the damage had already been done and had been particularized in reference to Mr. Sierra who had made the efforts and as a result of making the efforts was not able to view the captioned websites. The next point I have is regarding the intentional discrimination. If there are no questions on standing. On intentional discrimination, this court has had numerous cases on intentional discrimination and deliberate indifference in the death plaintiff context. And so I don't need to go into all those cases. But from my reading of those cases, obviously notice is required. And in this case, the Sierra... I'm sorry. Why don't you tell us what facts support deliberate indifference by the city of Hollanddale Beach? Okay. First, the district court said it was negligence for the city not to respond to Sierra's request. That came out of thin air. I'm not sure anybody argued that point at that time. And there was no support listed in the district court decision nor any case law on it. So whether or not the city was negligent and was failing to respond is a question of fact that should be considered whether the city was deliberately indifferent. Second, the city took no action not just from the request from Mr. Sierra but his request from council and the request or the lawsuit, which in effect provided notice, and did nothing until two years later in the April 2019 resolution. And I think a jury could look at that to determine whether or not the city was deliberately indifferent. That reminds me of the Crane case where no interpreters at the hospital for whatever number of days except the last day where they put it at time of discharge. And in that case, this court held, well, there was certainly genuine issues of fact and dispute as to whether or not the hospital in that case was deliberately indifferent during the time that they did provide auxiliary aid despite the fact that during the last time that the hospital did. And then the policy in and of itself raises questions of whether the city was deliberately indifferent. Council, your time has expired. My time has expired? I have two minutes. Looks like your time has expired, Mr. Sharma, but you've reserved some time for rebuttal. Yes, I have. Thank you, Your Honors. All right. We'll hear from Mr. Stearns on behalf of the city. Good morning. Christopher Stearns on behalf of the city of Hallandale Beach. May it please the court, thank you for this time. I want to start off with a paramount, very significant fact, and that is the city of Hallandale Beach began closed captioning its videos before Eddie Sierra ever contacted the city. The city started closed captioning all videos placed on the website in February of 2017. Mr. Sierra first contacted the city in July of 2017, and that allegation appears in the complaint. It's admitted that we were captioning before that time. So it's very unclear in some of the briefing, but what we're talking about here are the archived videos of the city of Hallandale Beach. That is, from prior meetings that occurred in 2015, 2016, and up to February of 2017. So, counsel, you argue that it doesn't violate the ADA not to close caption archived hearings? Yes. To the extent that they're requested? Yes, Your Honor. I would say to you at this point that there has been no finding of any court determining that a city must close caption all of its past archived video that appears on the website. That's significant to the deliberate indifference. I'm not sure there's been a holding by any court that's binding on us that it doesn't violate the ADA. I agree with you. There has not been a determination either way. But I do think it's very significant to the extent that the city is one of the few who was actually doing this at the time when this all came about in 2017. Well, it wasn't doing it as to pass the ADS. No, it was not. And the city, as you look at the resolution, which is in the record, which was subsequently adopted, which is the evidence of why the city did something, the city sought to determine whether or not closed captioning of all of those past meetings, of those years of meetings, was something that they could do. And the city determined that that was cost prohibitive in order to post all of these videos with closed captioning. It was too much money. So the city decided to handle those on a case-by-case basis. The city had an ADA coordinator, and it said, if you would like to have any video closed captioned, contact us, and we will do that. We're not going to spend tens of thousands of dollars to closed caption all these past videos of meetings that very rarely does anybody ever look at. So your argument is he never asked for a specific video that you refused to closed caption on. Absolutely. Yes. And I think that, Your Honor, the actual request by the plaintiff is very significant in the language of that, and if I could just read it to you. This is in the record at DE 39-4. This is an email from Eddie Sierra, 920 at night, July 20, 2017. I visited your website recently and tried to view the videos. However, because I'm deaf, I wasn't able to hear the audio tracks of the videos. The videos on your mayoral website aren't captioned either. Would you please provide closed captioning for your videos on your website? Closed captions are the best auxiliary aids for me under the ADA. Please don't use auto-captioning on YouTube because it doesn't produce accurate closed captioning. If you're not the person who's responsible for this, please send it to the right person. So it's an email sent off to the mayor, just one of the elected public officials for the city, commission form government. It does not reference any specific video on the city's website, and, in fact, it references the mayoral website, which is not a city website itself. This is Judge Wilson. Is this all information that we're taking from the pleadings because we're here to review the grant of a 12B6 motion to dismiss, right? Well, actually, Your Honor, the motion that was before the court was a motion for summary judgment, and Judge Moreno granted dismissal based upon the motion for summary judgment, not on the motion to dismiss, and based on the entire view of the record. This court may review the summary judgment and determine that summary judgment should have been granted on the claim for intentional discrimination. So the district judge decided that there's no standing, and if there is standing, in any event, there's no genuine issue of material fact supporting a claim for intentional discrimination under the Americans with Disabilities Act. That's the procedural posture of the case? Yes, Your Honor. Okay. All right. So I'd like to know what... If you could go back to my question specifically, what facts in the record support deliberate indifference? None. My argument is that there is no evidence whatsoever of deliberate indifference on the part of the city. Your opposing counsel says that the city waited two years before publishing videos on its website that did not contain closed captions. Why didn't that create an issue of fact? That is a misstatement of fact. The city had been closed captioning all videos on its website since February. In this record, did the city wait two years? He says that we waited two years to take the archival videos down. Okay. And that's correct. And there is, in the resolution adopted by the city, it specifically also references... We don't have a conflict of evidence in the record? No, we do not. Okay. This is Judge Newsom. Is it also a misstatement that he twice contacted the city or city officials with these requests and received no response? No, that is not a misstatement. And I just read to you the first contact to the city, which was an email, a form notice that he sent off to the mayor, one like he sent in many other cases, which are matters of public record there, but he sent it off to the mayor referencing the mayoral website, referencing the fact that things were not closed captioned and not requesting any type of a specific accommodation. The mayor is an elected public official. It's not her role to deal with these types of things, and it's not her role to contact this individual after receiving this. Is it even arguably, at summary judgment, her role to forward his request on to somebody who is responsible? No. The city has an ADA coordinator. The city has a city manager. These are the people who are in charge of managing the government. The city's code, which wasn't argued in the brief, but it's a matter of public record, prohibits the mayor from engaging in that type of conduct, from contacting any individual and directing them to do something. The mayor did what she's supposed to do, which is bring it before the commission, and the commission itself looked into this request. Did it take a year and a half? Yes. Was this case being litigated on other issues? Yes. But did the commission decide what they wanted to do? The commission chose for the city how to handle these types of requests. The commission said, we have been closed captioning since February 2017. Our meetings are already being closed captioned. So there is no violation right now. We're going above and beyond what the ADA has required to date from binding case law. We are doing this. Now, as to the videos in the past, again, something that Mr. Sierra never specifically referenced, any video at any time, any inability, never requested a specific accommodation, never requested the city take this video and do something, or it would have, those videos, it's cost prohibitive for us to do all of them right now. We don't have the funds. So we're going to take down that content, the archived video, which is not something that people look at regularly, and if any individual wants to view one of those videos, request an accommodation, and we will do that. That is the exact opposite of deliberate indifference. There is no evidence whatsoever in the record establishing any type of deliberate indifference on behalf of a city official. But you don't deny, right, that his letter to the mayor said, hey, look, if you're not the right person, will you forward this on to me? No, I don't deny that. And so what's the incentive here? Isn't the incentive then to just, like, radio silence, this is what cities should tell their officials, radio silence in response to requests like this is a get-out-of-jail-free card. It will never be deliberate indifference. Just don't respond. No, because the city's website itself said, if you have a problem, this is where your content is supposed to go. This should go to a city manager. This should go to the people who are in charge of operating the city. The mayor is just a single elected public official receiving one email, and this request in and of itself, it referenced her personal website as well, the mayoral website. It's unclear that this is a request. So, counsel, if this is Karnes, you would advise the mayor, if she gets one of these requests for ADA compliance on behalf of the city in the future, just to ignore it and throw it away, right? I absolutely would not. Do I wish that she had referred it to the city manager? Yes. Well, I mean, why not? If there's nothing wrong with that, if the person has to send it to the correct city official or suffer it being ignored, what's wrong with her doing that? There's nothing wrong with doing it, but it's not sufficient evidence of deliberate indifference on the part of the city, Your Honor. All it is is the fact they sent off one message to a single commissioner that was not responded to. However, let's not lose that. But if we look at the evidence in a light most favorable to Mr. Sierra, why couldn't a reasonable jury determine that when he emailed the mayor and when he mailed a copy of that email to the mayor's office and they failed to promptly act with the knowledge of the lack of these videos being closed captioned, that that's sufficient to constitute deliberate indifference in violation of the Americans with Disabilities Act? Shouldn't we leave that determination up to the jury if we determine that we look at these facts in a light most favorable to Mr. Sierra? No, because even looking at the facts in a light most favorable to Mr. Sierra, the city at that time was closed captioning already. This doesn't request specifically anything related to any specific meeting in the past, anything that was not closed captioned. It is a form letter that is very bland. It is not sufficient to give the city notice of a violation of a federal right and to ignore that. Deliberate indifference, as this court has said before, is an exact standard. So when we go to the record, the record is clear that at the time that he sent these emails to the mayor, the videos were closed captioned at that time, and that's clear from this record? Yes. In their complaint, they allege that. That's at D31, paragraph 6. This is a quote from their complaint, which framed the pleadings in this case. In February 2017, Hollandale Beach began captioning its legislative meeting videos. But I thought the point was that he was trying to look at archived videos, and those weren't closed captioned. And when he emails the mayor, whether or not she's technically the right person or technically has some obligation to forward on his request, upon his request, he says, I can't hear these things, and so I can't sort of, you know, absorb them. Closed captioning is the best thing for me. I'm the ADA. Please do it. Yes, that is what we've determined now that he's referencing. I would say to you, Your Honor, that the request itself nowhere says archived video. Nowhere says anything in particular as to what he's talking about. And the resolution itself addresses this as well and says, we cannot afford to do this for all of the past videos. We've made a determination as a city that it's too cost prohibitive to do that. It's our official position that we will handle these on a case-by-case basis. And there's no evidence whatsoever that he ever came forward and said, I need to view this video, and we refused an accommodation. I mean, that to me sounds like a pretty compelling closing argument. You know, you say to the jury, this isn't deliberate indifference. This is fiscal responsibility. We'd love to accommodate every person who comes our way with a disability, but we simply can't do it, and so we've got to, you know, make difficult choices. And here we made a difficult choice. We regret the effect on Mr. Sierra, but, you know, sort of responsible fiscal policy requires no less. We ask the members of the jury to return a verdict in favor of the defendant. No, because the court has to look at the record evidence and decide whether or not there's sufficient evidence in order to get to that phase. This court has previously stated in the McCollum case that the plaintiff must introduce evidence that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood. It is a McCollum totally different, right? Because McCollum was a case in which there was some response to the requester, as I recall. It was just we deemed it inadequate. Here we've got just total radio silence. Yes, I would say to you that in McCollum, it's much more easy to prove deliberate indifference because there was actual interaction between the two. There was contact between the individual as to the type of accommodation repeated and whether or not something should be granted. Here you have a single email sent off and a general email talking about closed captioning all types of videos. It is an instance where they came in, engaged in any type of interaction, didn't come to a city commission meeting, didn't come to the city manager, didn't do anything to engage in a process with the city by which we would know there was some problem going on and have the ability to decide how to respond to it. They sent off one email to the mayor that was not responded to and then their attorney who was in litigation sent a copy of it again. That is not enough under the prior case law from this court to prove deliberate indifference. There needs to be an actual knowing decision. The city needs to be in a position to know that a violation of a federal right was likely and to make a knowing, deliberate choice to not do anything about it. The record just simply does not support that. Any other questions for me, Your Honor? We have your argument, Mr. Stearns. Thank you. Thank you. I would ask that the decision be affirmed. Mr. Charmatt, do you reserve some time for rebuttal? Yes, I did. I would discuss deliberate indifference because that was what the council for the city used in his time. As this court pointed out, the letter to the mayor from Eddie Sierra speaks for itself. If you are not the right person who is responsible, please send it to the right person. The letter references the Americans with Disabilities Act. The letter references that website videos were not accessible to him. No answer. Then we get to Courtney Cunningham's counsel for Mr. Sierra. Letter again to the mayor. No answer. No response. The answers to the interrogatories indicate that there were and a declaration from Greg Shirea, I'm mispronouncing his name, but it's in the record. I'm familiar with the lawsuit the plaintiff Eddie Sierra filed against the city, as well as the plaintiff's assertion has been denied access, and it lists four separate platforms. Standard video stream, archived commission meetings, video content on the website, social media. Four. The answers to interrogatories indicate that captions for the commission meetings started on April 2017, one. The policy from the city, the two-year later policy, states that for the social media platform, they will enable the captions to be shown. So they were never shown over the two-year period. Yes, there were some issues regarding the archived videos, right? And yes, the city started captioning the legislative videos beginning in April 2017. But there certainly are disputed facts as to what videos were or were not captioned. I think Sierra presented evidence that a good number were not, that all the archived videos, and I counted on the, it's in the record, at least 100 of them, were not captioned. If the city has said something as an answer when Sierra made this request, okay, you want some videos, which videos do you want? Or we are ready to do this, or we're working on it, and we will work with you to get these videos captioned. All of that would have worked, but they didn't do anything. And as this court pointed out, the silence here is certainly an indication of deliberate indifference. In Liesi, I think in Liesi, the court held that when the request was made, and it was an oral request for interpreters, and the doctors didn't respond, that that was a factual issue that could result in deliberate indifference. In the Crane case, the same issue where nothing happened until the last day. And even in McCollum, as you point out, the hospital did a number of things immediately. That was not the same as this case where, yes, two years later, they say it's an undue burden, which could have been a defense at a jury trial, but it's not a decision to be made on past injury and damages. And remember, Sheely holds that emotional distress damages are available for victims of discrimination. And when you combine Sheely with the other cases on deliberate indifference from this court, you have an issue of fact that should be before a jury rather than on summary judgment. All right. I think we have your argument, Mr. Charmette. Thank you. Thank you, Your Honor. And thank you, Mr. Stearns. And that concludes our docket for this morning. And this court will be in recess until 9 o'clock tomorrow morning.